IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-67-BR

| LISA MICHELLE FREEMAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF ST. PAULS, N.C., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Town of St. Pauls' (the "Town") motion for summary judgment, (DE # 26). Plaintiff, Lisa Michelle Freeman, filed a response in opposition, (DE # 32), to which the Town filed a reply, (DE # 34). This motion is ripe for disposition.

## I. BACKGROUND

On two separate occasions, plaintiff worked as a police officer for the Town of St. Pauls Police Department ("Department"). (DE # 27, ¶ 1; DE # 33, ¶ 1.) Initially hired in early 2008, plaintiff worked for the Town until she resigned to work for the Hoke County Sheriff's Department in mid-2010. (DE # 27, ¶ 1; DE # 33, ¶ 1.) Approximately four months after her resignation, plaintiff returned to St. Pauls where she worked until her termination on 29 February 2016.[1] (DE # 27, ¶ 1; DE # 33, ¶ 1.) During both terms of plaintiff's employment, Thomas Hagens served as Chief of the Department and was responsible for her hiring. (DE # 27, ¶ 2; DE # 33, ¶ 2.)

---

[1] In her complaint, plaintiff alleges she was terminated on 29 February 2016. (DE # 1, at 7.) The Town admits this allegation in its answer. (DE # 11, at 5.) However, in its statement of facts the Town alleges she was terminated on 25 February 2016 and plaintiff admits this allegation in her response thereto. (DE # 27, ¶ 19; DE # 33, ¶ 19.) Additionally, the parties provide a termination letter dated 25 February 2016, (DE # 27-9), and one dated 29 February 2016 (DE # 1-4). The 29 February letter indicates it is plaintiff's "notice of termination" and notes that she has had previous violations of the notice policy. (DE # 1-4.)

In early 2015, plaintiff began "missing a significant amount of work" due to medical problems. (DE # 27, ¶ 10; DE # 33, ¶ 10.) In April 2015, Chief Hagens and Town Administrator J.R. Steigerwald met with plaintiff "to discuss her missing work and not providing sufficient advance notice." (DE # 27, ¶ 13; DE # 33, ¶ 13.) During this meeting, plaintiff and Chief Hagens disagreed about the amount of notice required, with plaintiff contending the Town's personnel policy required two hours and Chief Hagens contending his department policy required eight. (DE # 27, ¶ 13; DE # 33, ¶ 13.) Ultimately, plaintiff contends Chief Hagens instructed her to provide at least five hours' notice going forward. (DE # 27, ¶ 13; DE # 33, ¶ 13.) Plaintiff alleges she was the only officer subject to the five-hour requirement. (DE # 27-4, at 46.) Following this meeting, "[plaintiff's] absences continued to be an issue, and in October of 2015, the Town Board of Commissioners approved revisions to the Police Department's Policies and Procedures manual to expressly require Police Department employees to provide 8 hours['] advance notice before taking sick leave." (DE # 27, ¶ 14; DE # 33, ¶ 14.) Although applicable to all employees, "[plaintiff] felt that this policy change was implemented primarily because of her absences." (DE # 27, ¶¶ 14–15; DE # 33, ¶¶ 14–15.)

Thereafter, plaintiff continued to miss time at work. On 24 November 2015, plaintiff contends she left work early after "realiz[ing] she was in too much pain to complete her shift." (DE # 1, at 5; DE # 11, at 4.) As a result of her leaving without proper notice, Chief Hagens issued plaintiff a written reprimand which also notes that plaintiff has been reminded of the eight-hour policy on multiple occasions. (DE # 1, at 5; DE # 11, at 4; DE # 1-2.) On 22 January 2016, plaintiff called Chief Hagens approximately an hour and a half before her shift to report that she would not be coming in to work due to a power outage at her home. (DE # 27, ¶ 16; DE # 33, ¶ 16.) As a result, Chief Hagens issued her another written reprimand, noting that he had previously instructed her that she must be at work that evening and that she "had been verbally

warned about calling in at the last minute." (DE # 27, ¶ 16; DE # 33, ¶ 16; DE # 27-8.) On 11 February 2016, Chief Hagens again met with plaintiff regarding her absenteeism.[2] (DE # 27, ¶ 17; DE # 33, ¶ 17.) He and Captain Adkins instructed plaintiff that she was prohibited from leaving during a shift without first contacting one of them and explaining the circumstances. (DE # 27, ¶ 17; DE # 33, ¶ 17.) On 25 February 2016, plaintiff, due to back pain, left work approximately two and a half hours before the end of her shift. (DE # 27, ¶ 18; DE # 33, ¶ 18; see also DE # 1, at 6–7.) Plaintiff contends that Sergeant McMillian, who is in her immediate chain of command, gave her permission to leave. (DE # 32-6, at 9.) She also left a note on Chief Hagens' door. (Id.) The following day, plaintiff alleges her doctor took her out of work due to her medical condition. (See DE # 1, at 7.) Plaintiff contends that Chief Hagens was angry when she informed him of this. (Id.) Thereafter, Chief Hagens terminated plaintiff, citing "dereliction of duty" due to her failure to contact himself or Captain Adkins when she left work early on 25 February 2016.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial," and may not rest on the allegations or denials in its pleading. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). "[T]he

---

[2] It is unclear whether this is the same meeting discussed in Freeman's complaint, during which she alleges Chief Hagens was "screaming, why don't you just leave?" (DE # 1, ¶ 19–21; DE # 32-6, at 3.)

3

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. In determining whether a genuine issue of material fact exists, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

### III. DISCUSSION

Plaintiff alleges the Town discriminated against her because of her sex in violation of Title VII of the Civil Rights Act.[3] An employee may establish a Title VII violation, sufficient to overcome a summary judgment motion, in one of two ways. First, by presenting "'direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" Brinkley v. Harbour Rec. Club, 180 F.3d 598, 607 (4th Cir. 1999) (quoting Goldberg v. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988)). Second, an employee may establish a Title VII violation by proceeding under the McDonnell Douglas framework. Id. Here, plaintiff contends she has established a claim for discrimination under either avenue.

**A. Direct Evidence**

Direct evidence requires "'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Brinkley, 180 F.3d at 607 (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). While blatantly derogatory statements can constitute direct evidence, stray or isolated remarks are insufficient absent a clear nexus with the adverse employment decision. Melendez v. Bd. of

---

[3] Plaintiff also uses the phrase "hostile work environment" in the "nature of action" and "claim for relief" sections of her complaint, but does not provide facts, elements, or briefing to suggest she is alleging a separate claim for hostile work environment.

4

Educ., 711 F. App'x 685, 687 (4th Cir. 2017); Signal v. Gonzales, 403 F. Supp. 2d 528, 540 n.5 (D.S.C. 2006) ("Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination") (citation omitted). "[D]irect evidence of discrimination requires no inference or presumption on the part of the factfinder." Arrington v. Smithkline Beecham, Corp., No. 5:02-CV-655-H, 2004 U.S. Dist. LEXIS 27133, at *17 (E.D.N.C. Mar. 30, 2004). Thus, "the evidence must show that the employer announced, admitted, or 'otherwise unmistakably indicated' that an impermissible consideration was a determining factor, or that discrimination can properly be assumed from the circumstances." Betof v. Suburban Hosp. Inc., No. DKC 11-1452, 2012 U.S. Dist. LEXIS 90794, at *18 (D. Md. June 29, 2012) (quoting Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982)).

Here, plaintiff asserts she has presented two pieces of direct evidence of discrimination: (1) Officer Brian Walker's "testimony that [plaintiff] was treated differently because she is a female," and (2) Town Administrator Steigerwald's statement that Chief Hagens "specifically named [plaintiff], complained of her perceived absenteeism, and said he wanted the sick notice requirement to be increased to eight (8) hours because of [plaintiff]." (DE # 32, at 11–12.)

Officer Walker does not report hearing any discriminatory statements made about plaintiff. He testified that he "feel[s] like [plaintiff] was picked on" because "she could outdo the men," and "think[s] [this] had [some]thing to do with her sex." (DE # 32-7, at 13.) In the provided deposition excerpt, Officer Walker does not state who he believes "picked on" plaintiff nor does he offer any evidentiary support for his belief that it was due to her status as a female. Officer Walker does testify that he "think[s] [Chief Hagens] was trying to get rid of [plaintiff]."[4] (See id. at 7.) Even assuming Officer Walker believes this to be because of plaintiff's sex—

---

[4] In the deposition excerpt provided, "he" is not identified by name but presumably refers to Chief Hagens.

5

which he does not state—he offers no evidence in support of this belief. Officer Walker's subjective belief regarding the Department's disciplinary enforcement does not constitute direct evidence of discrimination. See Christian v. S.C. Dep't of Labor Licensing & Regulation, 651 F. App'x 158, 165 (4th Cir. 2016) (noting that subjective beliefs about a co-worker's non-selection do not carry any more weight than the plaintiff's assertion that the conduct was discriminatorily motivated); Brinkley, 180 F.3d at 609 (noting an affidavit providing a personal opinion in conclusory fashion is inadequate to constitute direct evidence). Officer Walker's personal beliefs are not "evidence of conduct or statements" which establish a discriminatory attitude by the decisionmaker and bear on the employment decision. See Brinkley, 180 F.3d at 607.

Likewise, Steigerwald's testimony that Chief Hagens "mention[ed]" plaintiff in the conversation regarding the notice policy does not evidence a purpose to discriminate. (See DE # 32-9, at 2.) Steigerwald actually testified that "[Chief Hagens] said that [plaintiff] was leaving work with less than eight hours—well, with inadequate notice. In other words, he didn't have time to find replacements on two-hours notice." (Id. at 3.) This statement does not reflect a sexist attitude nor an intent to discriminate against plaintiff. Additionally, Steigerwald testified that prior to 2015 he and Chief Hagens had discussed the problem of replacing officers without adequate notice. (Id.) Thus, Steigerwald testified that the ultimate policy change "was in response to any personnel in the police department not giving notice of at least eight hours" and "[i]t was applied to all of the officers." (Id. (emphases added).) Chief Hagens' mention of what he deems inadequate notices by plaintiff, during a discussion in which he is seeking a uniformly applicable policy change, does not amount to the type of "blatant remarks" which constitute direct evidence of discrimination. Signal, 403 F. Supp. 2d at 540 n.4; see also Martin v. Brondum, 353 F. App'x 242, 244 (4th Cir. 2013) (noting in a race discrimination case that facially-neutral statements, without more, fail to constitute evidence of animus).

The statements provided by Officer Walker and Steigerwald do not "present[] sufficient factual information from which a reasonable juror could conclude that [Chief Hagens] impermissibl[y]" discriminated against plaintiff on the basis of sex. Bass v. City of Wilson, 155 F.R.D. 130, 134 (E.D.N.C. 1994). As such, plaintiff has not presented direct evidence of discrimination and must proceed under the McDonnell Douglas framework.

**B. McDonnell Douglas**

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981); Lettieri v. Equant Inc., 478 F.3d 640, 649–50 (4th Cir. 2007); Sanders v. Tikras Tech. Sols. Corp., 725 F. App'x 228, 229 (4th Cir. 2018). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. Burdine, 450 U.S. at 252–53; Lettieri, 478 F.3d at 646; Sanders, 725 F. App'x at 229. If the employer presents a legitimate, non-discriminatory reason for its action, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered reason was truly only pretext. Lettieri, 478 F.3d at 646–47. To demonstrate pretext, plaintiff must produce evidence showing that the employer's explanation is "unworthy of credence." Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147 (2000)). Ultimately, plaintiff bears the burden of persuading the court that she was the victim of intentional discrimination. Burdine, 450 U.S. at 253 (citations omitted).

*1. Discrimination in the enforcement of disciplinary measures*

Defendant characterizes plaintiff's claim as one for discrimination in the enforcement of disciplinary measures. (See DE # 29, at 8.) Under this theory of discrimination, plaintiff must demonstrate:

7

> (1) that she is a member of a protected class, (2) that the prohibited conduct which she engaged in was comparable in seriousness to misconduct of employees outside of the protected class, and (3) that the discipline imposed on her was more severe than that imposed on those comparators who are outside of the protected class.

(See DE # 29, at 8 (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)); see also Hurst v. District of Columbia, 681 F. App'x 186, 190 (4th Cir. 2017). The parties agree plaintiff is a member of a protected class. (DE # 1, at 2; DE # 11, at 2.) They disagree, however, as to whether she has identified a proper comparator for elements two and three.

Although "[c]omparators need not be identical . . . they must be similar in all relevant aspects, 'such as conduct, performance, and qualifications.'" Emami v. Bolden, 241 F. Supp. 3d 673, 680 (E.D. Va. 2017) (emphasis in original) (quoting Rayyan v. Virginia Dep't of Transp., No. 1:15-CV-01681, 2017 U.S. Dist. LEXIS 5061, at *3 (E.D. Va. Jan. 12, 2017) (citing Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)). Thus, when relying upon comparators to establish disparate treatment, plaintiff must demonstrate that "the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting Haywood, 387 F. App'x at 359). Of course, plaintiff must also demonstrate that the discipline imposed on her was more severe than that imposed on comparators outside of the protected class. Cook, 988 F.2d at 511 (examining the range of discipline implemented for comparable offenses).

Plaintiff contends she has identified at least three comparators who violated the sick leave policy but were not terminated: Officer Rick Taylor, Officer David Perkey, and Officer Harrison Locklear. (DE # 32, at 14.) Plaintiff contends Officer Taylor constitutes a comparator because he "missed work for 7-8 weeks to care for his ailing wife" and although "his absence left the

8

department without adequate coverage," he has not been punished and "remains on leave with no sick time left." (DE # 32, at 8.) However, unlike plaintiff, Officer Taylor is not a sworn police officer, (DE # 32, at 2), he is "a dispatcher and animal control" officer, (DE # 32-8, at 11). Due to the differences in their positions, Chief Hagens testified that Officer Taylor's absences do not create the safety concerns posed by plaintiff's, a patrol officer, unscheduled absences. (DE # 35, at 1.) Additionally, while Chief Hagens acknowledges Officer Taylor has been out of work for some time now, he testified that Officer Taylor used disability leave which "did not result in 'unscheduled absences.'" (Id. at 1–2.) Thus, both Officer Taylor's position and his conduct differ from plaintiff's.

Plaintiff alleges Officer Perkey constitutes a comparator because he "took at least one month off, using his sick leave, after only giving Chief Hagens one- or two- weeks' notice." (DE # 32, at 5.) Plaintiff alleges "[t]he department worked around him," but "[she] was denied such a courtesy" when she could not complete a shift due to pain on 24 November 2015. (DE # 32, at 5.) She acknowledges her write up for the 24 November 2015 incident stated: "[She] has been told several times that she is to call Chief Hagens at least eight (8) hours before her shift if she is not going to be at work." (Id.) Thus, in that instance, it was specifically determined that she provided inadequate notice for her absence. Steigerwald testified that Officer Perkey, however, "had sufficient sick time, and he had given adequate notice." (DE # 32-9, at 5.) Thus, plaintiff and Officer Perkey did not "engage[] in the same conduct without [] differentiating or mitigating circumstances." Haynes, 922 F.3d at 223–24.

Finally, plaintiff identifies Officer Locklear as a comparator. (DE # 32, at 14.) She contends Officer Locklear took extensive sick leave due to cancer and that she provided comparable doctor's notes to support her sick leave. (Id. at 9–10.) As with Officer Taylor, Chief Hagens testified that Officer Locklear's absences were not "unscheduled" and that he provided

sufficient notice to ensure "that someone could be lined up to cover his shifts." (DE # 35, at 2.) Plaintiff failed to give such notice for her absences. (See DE # 35, at 1–2; DE # 27-2, at 2.) Thus, Officer Locklear did not engage in conduct comparable to that of plaintiff.

While plaintiff focuses on the amount of time others were out of work, the record reveals that "[her] primary workplace problem was *unscheduled* absences." (DE # 35, at 2 (emphasis in original).) Her termination letter reprimands her for clocking out of work, prior to the end of her shift, without calling the appropriate authority and states this was "dereliction of duty." (DE # 27-9; DE # 32-5.) Chief Hagens' sworn statement says: "[Plaintiff] developed a habit of giving the department inadequate notice of her absences"; that "[her] failures to give adequate notice continued to be detrimental to the police department"; and that "the cumulative record of [her] absenteeism and insubordination led to her termination." (DE # 27-2, at 2–3.) Chief Hagens testified that plaintiff violated the sick policy "by not calling in in the proper time" and the absenteeism policy by leaving work during a shift without calling as she was instructed. (DE # 27-5, at 26.) Ultimately, under oath, Chief Hagens stated that plaintiff's "problems with unscheduled absences were worse than any other sworn officer in the St. Pauls Police Department." (DE # 35, at 2.) Plaintiff has failed to demonstrate that any employee engaged in similarly severe misconduct and received less-harsh discipline than she did. Thus, she has failed to establish a prima facie case of discrimination applying the elements for discrimination in the enforcement of disciplinary measures.

2. *Employment Discrimination*

To establish a prima facie case of discrimination, plaintiff contends she must establish:

(1) the plaintiff is in the protected [] group; (2) the plaintiff was discharged or demoted; (3) at the time of the discharge or demotion, the plaintiff was performing his job at a level that met his employer's legitimate expectations; and (4) following

10

his discharge or demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class.[5]

(DE # 32, at 11.) It is undisputed that plaintiff is a member of a protected class, (DE # 1, at 2; DE # 11, at 2), was terminated (DE # 1, at 7; DE # 11, at 5), and was replaced by someone outside of her protected class. (DE # 32-8, at 18–19.) Thus, the court's analysis will focus on whether plaintiff was performing at a level that met her employer's legitimate expectations.

To survive summary judgment, plaintiff must prove "by a preponderance of the evidence that [she] met the employer's legitimate job expectations." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515–16 (4th Cir. 2006). "Whether an employee met [her] employer's legitimate expectations at the time of termination depends on the 'perception of the decision maker . . . , not the self-assessment of the plaintiff,' and not the opinions of the plaintiff's coworkers." Arthur v. Pet Dairy, 593 F. App'x 211, 217 (4th Cir. 2015) (quoting Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000)). Thus, "at the prima facie stage we must consider the employer's 'evidence that the employee was not meeting [its] expectations.'" Id. at 217 (quoting Warch, at 515–56 (considering employer's evidence of expectations at prima facie stage does not impermissibly combine the pretext analysis with the prima facie case)).

Plaintiff has failed to present evidence that she was performing at a level that met her employer's legitimate expectations at the time of her termination. Plaintiff admits "if an officer fails to show up for an assigned shift or leaves work before the end of the shift, the remaining officer can be left without any backup." (DE # 27, ¶ 7; DE # 33, ¶ 7.) This presents obvious safety concerns for the officers. (DE # 35, at 1; DE # 27-4, at 49–50.) Thus, as plaintiff admits, "[i]t was common knowledge in the St. Pauls Police Department that Chief Hagens was

---

[5] While these appear to be the elements for an Age Discrimination in Employment claim, see Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir. 1993), comparable elements have been used in Title VII discrimination cases as well, see Brinkley, 180 F.3d at 607.

11

particularly strict about officers missing work. Absenteeism and unscheduled absences were his 'pet peeves.'" (DE # 27, ¶ 9: DE # 33, ¶ 9.) While plaintiff contends the policy required two hours' advance notice to miss work and Chief Hagens alleges eight hours' notice was required, there is no dispute between the parties as to what was expected after April of 2015. (DE # 27, ¶ 13; DE # 33, ¶ 13.)

In April 2015, Chief Hagens and then Town Administrator, Steigerwald, met with plaintiff "to discuss her missing work and not providing sufficient notice." (DE # 27, ¶ 13; DE # 33, ¶ 13.) In that meeting, Chief Hagens expressed his opinion that eight-hours' notice was required but also that plaintiff had failed to comply with even the two-hour standard. (DE # 27, ¶ 13; DE # 33, ¶ 13.) Chief Hagens then instructed plaintiff to provide at least five hours of notice going forward. (DE # 27, ¶ 13; DE # 33, ¶ 13.) After this meeting, plaintiff admits "[her] absences continued to be an issue" and that the policy was revised in October[6] 2015 to require all employees to provide eight hours' notice before using sick leave. (DE # 27, ¶ 14; DE # 33, ¶ 14.) On 24 November 2015, plaintiff left her shift before its completion after realizing she was in too much pain to work. (DE # 1, at 5.) Her write up for this incident reiterated that "she ha[d] been told several times" that she must give eight hours' notice if she is going to miss work. (Id.) On 22 January 2016, plaintiff failed to report to an assigned shift and failed to give adequate notice for her absence. (Id. at 5–6.) She was again written up for this behavior and reminded of the eight-hour notice policy. (Id. at 6.) Chief Hagens and Captain Adkins met with plaintiff on 11 February 2016 "to [discuss] her ongoing issues with absenteeism." (DE # 27, ¶ 17; DE # 33, ¶ 17.) Plaintiff admits that "Hagens and Adkins instructed [her] that she was not authorized to leave during a shift unless she contacted either Chief Hagens or Capt. Adkins and explained the

---

[6] Plaintiff's complaint alleges the policy was officially revised on 9 April 2015, (DE # 1, at 5), but the parties agree in their statements of facts that the policy was officially revised in October of 2015 (DE # 27, ¶ 14; DE # 33, ¶ 14).

12

circumstances necessitating that she leave." (DE # 27, ¶ 17; DE # 33, ¶ 17.) On 25 February 2016, plaintiff again left work prior to the end of her shift. (DE # 1, at 6–7.) Plaintiff did not contact Chief Hagens prior to leaving her shift, but left a note on his door the following day. (Id. at 7.)

Defendant presented "evidence defining the expectations as well as evidence that [plaintiff] was not meeting those expectations." Warch, 435 F.3d at 515–16. The record reveals that plaintiff was aware of Chief Hagens' expectations and the Department's policy. Plaintiff also recognized the rationale behind these expectations—leaving an officer without backup creates "a liability issue." (DE # 27-4, at 49.) She was reminded of the notice policy and informed that she was not complying with it, on at least four occasions in the ten months before her termination. (DE # 1, at 5; DE # 27, ¶¶ 13, 16–17; DE # 33, ¶¶ 13, 16–17.) See also Hill v. Southeastern Freight Lines, Inc., 877 F. Supp. 2d 375, 391 (M.D.N.C. 2012) ("Plaintiff cannot show that he was performing his job at a level that met his employer's legitimate expectations in light of the corrective actions that Plaintiff received, which detailed his unsatisfactory performance.") Plaintiff's own admissions, her written reprimands, along with the sworn testimony of Chief Hagens and Steigerwald all indicate the same thing: there was an ongoing concern with plaintiff's unscheduled absences. In light of this evidence, there is no genuine issue of material fact as to whether plaintiff was meeting the legitimate expectations of her employer. As such, she has failed to establish a prima facie case of discrimination and summary judgment in favor of the Town is appropriate.

3. *Pretext*

Even assuming plaintiff could establish a prima facie case of discrimination, she has failed to provide sufficient evidence that defendant's proffered reason for her termination—dereliction of duty—is a mere pretext for discrimination.

13

Faced with the Town's assertion that it terminated her for dereliction of duty, not discrimination, plaintiff must demonstrate that this justification for termination is "unworthy of credence." Dugan, 293 F.3d at 721 (citing Reeves, 530 U.S. at 147). That is, plaintiff must establish that the proffered reason was not the true reason for termination, but mere pretext for discrimination. Lettieri, 478 F.3d at 648 (citation omitted). To do so, plaintiff must identify evidence which calls into question the honesty of the decisionmaker's stated belief. See DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). "It is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Id. (citation omitted).

Plaintiff contends she "has presented credible evidence that Defendant's explanation was a pretext for discrimination in at least two (2) ways: 1) Walker's testimony that Plaintiff was treated differently because she is female; and 2) providing at least three (3) comparators using male officers that violated the sick leave policy, but weren't terminated by Chief Hagens." (DE # 32, at 14.)

Plaintiff's evidence fails to "'cast sufficient doubt upon the *genuineness* of the [defendant's] explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing.'" Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217–18 (4th Cir. 2016) (emphasis added) (quoting King v. Rumsfeld, 328 F.3d 145, 154 (4th Cir. 2003)). Plaintiff's unscheduled absences and Chief Hagens' complaints about them are well documented. (See DE # 1, at 5–7; DE # 27, ¶¶ 13–14, 16–17; DE # 33, ¶¶ 13–14, 16–17.) Plaintiff acknowledges she discussed these issues with Chief Hagens and was reprimanded on more than one occasion. (See DE # 1, at 5–7; DE # 27, ¶¶ 13–14, 16–17; DE # 33, ¶¶ 13–14, 16–17.) There is no evidence to suggest that her reprimands were falsely created or created as a pretext for discrimination. In fact, plaintiff admits to the conduct underlying the reprimands.

(DE # 1, at 5–6.) The decision to terminate an employee for documented inadequacies lies squarely within the purview of the employer. See DeJarnette, 133 F.3d at 298–99. "[T]his Court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions . . . .'" Id. (citation omitted). Based on the record evidence, there can be no question that Chief Hagens' sincerely believed plaintiff's unscheduled absences to be a problem, a fact he communicated to her often. Thus, she has failed to establish the proffered reason for her termination—dereliction of duty—was a mere pretext for discrimination.

## IV.   CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment, (DE # 26), is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Town and close this case.

This 27 August 2019.

_____
W. Earl Britt
Senior U.S. District Judge